IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 11, 2005

## ROBERT SHAWN CLARK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-28044     Bernie Weinman, Judge**

_____

**No. W2004-01582-CCA-R3-PC  - Filed March 9, 2005**

_____

The petitioner, Robert Shawn Clark, appeals the trial court's denial of his petition for post-conviction relief.  The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial.  After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; W. Mark Ward, Assistant Shelby County Public Defender (on appeal) and Karen Massey, Assistant Shelby County Public Defender (at trial), for the appellant, Robert Shawn Clark.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jim Lammey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Facts and Procedural History**

A Shelby County jury convicted the petitioner on two counts of robbery.  The trial court imposed concurrent four-year sentences.  In August 2002, this Court affirmed the decision of the trial court.  State v. Robert S. Clark, No. W2001-00921-CCA-R3-CD, 2002 WL 1841721 (Tenn. Crim. App., at Jackson, Aug. 5, 2002), perm. app. denied (Tenn. Dec. 16, 2002).  The underlying facts of the petitioner's case on direct appeal were summarized as follows:

On November 20, 1998, a robber carrying a police scanner entered a Union Planters Bank branch located in the Jitney Premier grocery store in Cordova, Tennessee.  At the teller counter, he announced that he had a gun in his pocket and

demanded that a bag he was carrying be filled with money. The tellers complied. The police were alerted by a silent alarm just as the robber left. After a photograph of the robber made from the bank's security videotape appeared in the local newspaper, police received an anonymous tip identifying the defendant as the robber. Later, bank tellers . . . identified the defendant from a photographic lineup.

Id. at *1.

On January 9, 2004, the petitioner filed a pro se petition for post-conviction relief, alleging various grounds for relief: (1) illegal search and seizure, (2) denial of due process because of evidentiary withholding, (3) failure to call witnesses, (4) cruel and unusual punishment, and (5) denial of equal protection. Recognizing that many of the arguments in the petition were adjudicated on direct appeal, the State requested that the trial court appoint counsel to amend the pro se petition. Following the appointment of counsel, the petitioner now pursues the single issue of whether he was denied the effective assistance of counsel at his original trial.

On May 13, 2004, the trial court held an evidentiary hearing on the petitioner's post-conviction petition. On direct examination, the petitioner first complained that his trial should have been transferred to another trial court division because he "had problems in that courtroom with the prosecutors and the judge" in a previous case. The petitioner's next complaint was that, although he had an expert waiting to review a videotape of the crime, his original trial counsel did not receive the video until "the day of trial." Finally, the petitioner stated that trial counsel failed to call two witnesses at trial.

On cross-examination, the State referred to this Court's direct appeal opinion which states:
[I]t is our view that the proffered testimony would not have been of substantial assistance to the jury. During its case in chief, the state introduced the original videotape and 18 still frames. While the still frames are not high quality, they are relatively clear and provide some detail. By comparison, the edited still frames produced by [the petitioner's expert] are actually blurrier and provide fewer details.

Id. at *4. The State then asked, "[w]hat exactly is it you say that [trial counsel] did not do for you?" The petitioner responded, "I walked in an innocent man and left out guilty. That's what I'm saying."

Trial counsel testified that the late production of the original videotape "just didn't change anything." The videotape was recorded on high speed tape that required modification by special equipment before it could be viewed. Rather than receiving the entire videotape, trial counsel received still photos for review. He "remember[ed] talking with [the petitioner] and his wife . . . who was very involved in the defense in this case whether or not we should request a continuance due to getting it late or to go ahead with it." Trial counsel testified that it was the "consensus of [the petitioner] and myself" to "go ahead with the trial" despite the late production of the tape. The

defense was able to have an expert "look at the video as the trial was going on" and call that expert on the third day of the trial.

In response to the petitioner's complaint that his counsel did not call certain witnesses, trial counsel testified that "it was a joint decision, when I say joint between [the petitioner] and myself, as to what . . . proof to put on and what proof not to put on." Trial counsel further testified that he "certainly give[s] an opinion and advice" to his clients as to what proof to put on, "but the ultimate decision is the client's." When asked on cross-examination why he did not call the petitioner's wife at trial, trial counsel stated that he "found [her] to be the type of witness that I would not want to put on being fearful of what would come out of her mouth.".

The trial court summarily denied the petition, stating:
> The defendant filed a Petition for Post-Conviction Relief alleging numerous reasons he should receive a new trial. Most of the allegations in the petition pertain to issues that were considered or waived on direct appeal.
> The defendant testified at the hearing on this petition that his case should have been transferred to a different division of criminal court for trial due to problems he had had with the trial judge and the prosecutors in the division where his trial was held. . . . There is absolutely nothing in this record that would indicate bias by the trial judge against the defendant. To the contrary, the record reflects the trial judge did everything in his power to assure that the defendant received a fair trial. This Court finds no merit to this allegation.
> The issue of prosecutorial misconduct was discussed by the Court of Criminal Appeals on direct appeal.
> Much of the petitioner's testimony in this hearing dealt with the prosecution turning over the videotape . . . . This issue was thoroughly discussed in the opinion delivered by the Court of Criminal Appeals.
> . . . .
> This Court finds that the trial counsel thoroughly discussed trial strategy with the defendant and by mutual agreement it was determined what proof would be presented at trial. The Court finds that it was mutually agreed upon not to ask for a continuance. This Court finds no merit to any of the issues presented by the petitioner at this hearing.
> The Court finds that the advice given and services rendered by the defendant's counsel was within the range of competency demanded by an attorney in a criminal case . . . [and] complied with the requirements set out by the Supreme Court of Tennessee in <u>Baxter v. Rose</u>, 523 S.W.2d 930.

The petitioner then filed this timely appeal.

## II. Analysis

The single issue presented in this appeal is whether the petitioner was denied the effective assistance of counsel. Once a trial court has ruled upon a post-conviction petition, its findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003) (citation omitted). The petitioner bears the burden on appeal to show that the evidence preponderated against the findings of the trial court. See Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978) (citation omitted). When reviewing factual findings, this Court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citation omitted). When reviewing the application of law to those factual findings, our review is de novo. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999) (citation omitted). As such, our review is de novo with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields, 40 S.W.3d at 458.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish both (1) deficient performance of counsel and (2) prejudice resulting from the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner must demonstrate the deficiency and the resulting prejudice by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). To establish deficient performance, the petitioner must show that the representation fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. The petitioner may not second guess a reasonably-based trial strategy and cannot criticize unsuccessful tactical decisions if they were made with adequate preparation. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994) (citation omitted), perm. app. denied, (Tenn. 1995); Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (recognizing that deference to a tactical decision is dependent upon a showing of adequate preparation).

In the instant case, the petitioner's first argument, that his trial should have been moved to another division, was addressed by the trial court as follows: "There is absolutely nothing in this record that would indicate bias by the trial judge against the defendant. To the contrary, the record reflects the trial judge did everything in his power to assure that the defendant received a fair trial." There is no evidence in the record, nor has the petitioner presented any evidence to show that his previous appearance in the trial court prejudiced his right to a fair trial.

The petitioner next complains that he received ineffective assistance of counsel because his trial counsel did not receive a copy of the video until immediately prior to trial. Even if the untimely production of this evidence did constitute a deficiency on part of counsel or the State, the petitioner must prove that the deficiency prejudiced the case in some way. Trial counsel stated that the late

receipt of the evidence "just didn't change anything." The defense expert had time to review the videotape during the first two days of trial, and he testified on the third day. Trial counsel and the petitioner also had multiple video stills from the original tape. On direct appeal, this Court stated that the still frames were relatively clear and were less blurry than the edited still frames of the petitioner's expert. Furthermore, trial counsel testified that he came to an agreement with his client not to continue the case. There is no evidence in the record to indicate that this factor prejudiced the petitioner's case.

The petitioner's additional argument, that trial counsel was ineffective for failing to call two witnesses at trial, is also without merit. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, this presentation is the only way a petitioner can prove (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Id. Neither the trial court nor this Court can speculate on what a witness's testimony might have been if introduced by counsel. Id. Furthermore, the trial court accredited trial counsel's testimony that he allowed the petitioner to decide what proof to introduce. The trial court found that "the trial counsel thoroughly discussed trial strategy with the petitioner and by mutual agreement it was determined what proof would be presented at trial." Although the petitioner may have "asked [trial counsel] weren't we going to call them," there is no evidence in the record that trial counsel ignored any specific instruction by the petitioner. Consequently, the evidence does not preponderate against this factual finding of the trial court.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE